IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ASHLEY AARON ETHERIDGE | * | |
| | * | |
| v. | * | Civil Case No. JKB-15-697 |
| | * | |
| COMMISSIONER, SOCIAL SECURITY | * | |
| | * | |

*************

REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered both parties' dispositive motions. [ECF Nos. 11, 12]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that Ms. Etheridge's motion be denied, that the Commissioner's motion be granted, and that the Commissioner's judgment be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Etheridge filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Tr. 173-74, 175-80). Her applications were denied initially and on reconsideration. (Tr. 101-04, 107-10). An Administrative Law Judge ("ALJ") held a hearing on August 13, 2014. (Tr. 27-60). Following the hearing, the ALJ determined that Ms. Etheridge was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 11-26). The Appeals Council denied Ms. Etheridge's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Etheridge suffered from the severe impairments of bipolar, anxiety, and depression. (Tr. 16). Despite these impairments, the ALJ determined that Ms. Etheridge retained the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: because of her mental impairments, she can perform jobs consisting of unskilled, routine, and repetitive tasks, in a work environment with flexible hourly quotas, involving only simple, work-related decisions, with few, if any, work place changes, and with only occasional interaction with coworkers and no interaction with the public.

(Tr. 18). After considering the testimony of a vocational expert ("VE"), the ALJ determined that while Ms. Etheridge was unable to perform past relevant work, jobs existed in significant numbers in the national economy that Ms. Etheridge could perform. (Tr. 21). Therefore, the ALJ concluded, Ms. Etheridge was not disabled. *Id.*

Ms. Etheridge disagrees. She raises two primary arguments on appeal: (1) that the ALJ erred in the assignments of weight to medical evidence; and (2) that the ALJ erred in assessing her credibility. Each argument lacks merit.

Ms. Etheridge contends that the ALJ assigned too little weight to the opinions of two of her treating physicians, Drs. Joshi and Connall, and too much weight to her GAF scores and to the opinions of non-examining State agency physicians. Pl. Mot. 7-10. Importantly, this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In this case, the ALJ summarized all of the medical records in the file pertaining to Ms. Etheridge's mental health treatment, most of which reflect only mild to moderate symptoms once she began taking medications, particularly Lithium. (Tr. 19, 332, 336, 338, 340). The ALJ further discussed in detail the opinions rendered by Dr. Joshi and Dr. Connall, along with the opinion written by a certified nurse practitioner, Ms. Williams. (Tr. 20). In assigning "little weight" to those opinions, the ALJ noted that the

2

opinions were "not supported by the medical evidence," which he had already discussed at some length.[1]  (Tr. 20).

The ALJ also made two additional statements to support his assignments of "little weight."  First, the ALJ stated that "the claimant received no treatment for 9 months in 2012." (Tr. 20).  That statement appears to be at least partially erroneous.  The period in which Ms. Etheridge did not obtain treatment in fact spanned from sometime in 2011 through March of 2012, and is difficult to ascertain due to the absence of any treatment records from Dr. Connall.  Ms. Etheridge's re-initiation of medical treatment roughly coincided with the alleged onset date of her disability.  Second, the ALJ stated that "her GAF scores throughout the relevant period have been 60-75, indicating primarily mild mental health symptoms."  (Tr. 20).  Ms. Etheridge contends that it was error for the ALJ to rely upon GAF scores, which are not a reliable measure of disability in her view.

Even setting aside the partially erroneous statement about the lack of treatment in 2012, the ALJ's assignments of "little weight" were supported by substantial evidence.  The medical records in the file, which the ALJ reviewed in detail, paint a very different picture of Ms. Etheridge's mental health condition than the far more dire opinions expressed in the physicians' letters.  *Compare* (Tr. 323-324) (opinion noting marked limitations in almost all functional areas) *with* (Tr. 338) ("After starting the lithium, having some rapid mood changes, but not as dramatic as before, and don't last as long."); (Tr. 340) ("Much improved since lithium increased.  Mood is euthymic and stable.  No mood swings or cycling.  Over all (sic) coping well.").  Moreover, the

---

[1] Ms. Etheridge posits that both Dr. Joshi and Dr. Connall "treated Ms. Etheridge over a long period of time and Plaintiff was seen regularly since at least March 2012."  Pl. Mot. 11.  The record does not include any treatment notes from Dr. Connall, other than a June 14, 2012 letter indicating that Ms. Etheridge was seen on that date.  (Tr. 303-06).  There are no treatment notes from that visit or any other appointment, and there is nothing to indicate how frequently Ms. Etheridge was seen by Dr. Connall before or after that date, if she was subsequently seen at all.  With respect to Dr. Joshi, treatment notes indicate a total of only five visits before he issued his opinion, and the treatment began only in October, 2012.  (Tr. 329-42).

3

ALJ's partial reliance on Ms. Etheridge's GAF scores was not erroneous. It is well established that GAF scores are not determinative of disability. *See, e.g., Davis v. Astrue*, Case No. JKS–09–2545, 2010 WL 5237850, at *3 (D. Md. Dec. 15, 2010). However, nothing prohibits an ALJ from considering GAF scores as one component of a full analysis of the evidence of record. *See, e.g., Kozel v. Astrue*, No. JKS–10–2180, 2012 WL 2951554, at *10 (D. Md. July 18, 2012) ("[E]ven though a GAF score is not determinative of whether a person is disabled under SSA regulations, it may inform an ALJ's judgment."). Here, the ALJ did not rely exclusively on Ms. Etheridge's GAF scores, but engaged in a full consideration of the medical records as discussed above. The discussion of GAF scores, then, does not warrant remand.

Ms. Etheridge also alleges that the ALJ assigned too much weight to the opinions of the non-examining State agency physicians. Pl. Mem. 10-11. However, the ALJ assigned those opinions "great weight," not "controlling weight," and observed that the opinions were "consistent with the record evidence as discussed herein." (Tr. 19-20). The law recognizes that State agency medical sources are "highly qualified physicians, psychologists, and other medical specialists who are experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). The consultants in this case provided a detailed explanation of the medical support for their conclusions. (Tr. 70-74, 81-83). Ms. Etheridge contends that the State agency physicians' opinions should be discredited because additional evidence was added to the file after the State agency physicians issued their opinions.[2] However, the fact that additional medical evidence was added to the record after those opinions renders them no less valid as of the dates they were written. Finally, the ALJ did not use the State agency physicians' opinions to undermine the opinions of the treating sources, but relied independently on

---

[2] The same argument about timing and subsequent evidence would also discredit the June 14, 2012 opinion of Dr. Connall, and the July 7, 2012 opinion of Ms. Williams. Both of the State agency physicians issued their opinions after those dates.

4

inconsistent treatment notes in evaluating those opinions. Thus, the ALJ's decision appropriately assigned weight to the opinions of medical sources, and remand is unwarranted.

Ms. Etheridge also argues that the ALJ erred in assessing her credibility. Pl. Mot. 15-17. Specifically, she contests the ALJ's reliance on her activities of daily living (ADLs), and his characterization of her condition as "stable." *Id.* However, ADLs are one of several factors listed in the regulations that should be considered in evaluating a claimant's subjective allegations of impairment. *See* 20 C.F.R. §§ 404.1529, 416.929. While exclusive reliance on ADLs to contest the credibility of a claimant's allegations could be problematic, that situation does not exist in this case. With respect to the assertion of stability, the medical record in question says, "Much improved since lithium increased. Mood is euthymic and stable. No mood swings or cycling. Over all (sic) coping well." (Tr. 340). Thus, the ALJ's characterization of the records as demonstrating that Ms. Etheridge is "relatively stable with Lithium" is not erroneous. (Tr. 19). An ALJ's credibility determination should be affirmed absent "exceptional circumstances," *Bishop v. Comm'r of Soc. Sec.,*, 583 Fed. App'x 65, 68 (4th Cir. 2014), which are defined as cases where a "credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Edelco, Inc. v. N.L.R.B.*, 132 F.3d 1007, 1011 (4th Cir. 1997) (quoting *NLRB v. McCullough Environmental Services, Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)). None of those circumstances is present here. Instead, the ALJ's credibility evaluation was supported by substantial evidence and does not warrant remand.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. The Court DENY Plaintiff's Motion for Judgment on the Pleadings [ECF No. 11];
2. the Court GRANT Defendant's Motion for Summary Judgment [ECF No. 12];

5

3. the Court AFFIRM the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g); and

4. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated: October 30, 2015                               /s/
                                            Stephanie A. Gallagher
                                            United States Magistrate Judge